UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
Plaintiff

vs.                                                                                                    CASE NO.  1:22-cr-00136-JMC

STEVEN MILES,
Defendant
_____/

## SENTENCING MEMORANDUM

COMES NOW the Defendant, STEVEN MILES, by and through his undersigned counsel and states as follows:

1. The Defendant pled guilty to Count Two (2) of the Indictment which charged him with Assaulting, Resisting, or Impeding Certain Officers in violation of Title 18 U.S.C. Section 111(a)(1).

2. The applicable guideline range as stipulated in the plea agreement between the parties and according to the Pre-Sentence Report is Level 17, Criminal History Category 1, with an advisory Bureau of Prisons sentence of 24-30 months.

3. The parties agreed not to seek a different guideline range below what was agreed to in the plea agreement.  The Defendant reserved his right to seek a sentence that is sufficient but not greater than necessary, and to comply with the purposes set forth in Paragraph two (2) of Title 18 United States Code Section 3553(a).

### INTRODUCTION

The Defendant will stand in judgment before this Court for the crime he committed and for any relevant conduct that the court may consider regarding his activities on January 6, 2021 at the United States Capitol.  The Defendant has accepted full responsibility for the crime which he

has committed. The Defendant nor his counsel will minimize the negative effect the Defendant's conduct has had and will continue to have upon the United States, United States Capitol law-enforcement agencies, his family, his wife, his friends, and himself. The Defendant will allocate and will blame only himself. The Defendant, as a decorated and combat wounded veteran who served this country proudly, is humbled and humiliated. Sentencing will most certainly be very difficult for the Defendant.

As the court is aware, sentencing is not meant to punish alone. The Defendant offers this sentencing memorandum, and exhibits regarding his post-traumatic stress syndrome, in mitigation of his criminal conduct to assist this court in fully assessing the Government's case against him so that it may reach a sentence that is sufficient but not greater than necessary under law.

At sentencing the Defendant will answer any questions this Honorable Court has regarding his purpose in being at our nation's Capitol on January 6, 2024. The best evidence of what the Defendant's criminal conduct was is on video and when the Government plays these video clips this court will see exactly what the Defendant's activities were. The Defendant's criminal conduct as it relates to Count Two (2) and other relevant conduct on video is extremely important because as the court is well aware, every case is different and every set of facts is different. The Defendant should be punished for what he actually did and not just by the elements of the offense. He then should be sentenced appropriately along with taking into consideration his history and personal characteristics.

**I.  PRE-SENTENCE INVESTIGATION REPORT**

The undersigned counsel offered an addendum in response to the Pre-Sentence Report to clarify certain paragraphs in the report. Nothing in the addendum provided by the defense is a

material inaccuracy and are just minor factual inaccuracies.

The undersigned counsel does not object to the legal accuracy of the Pre-Sentence Report.

## II.  SENTENCING PROCESS

In order to arrive at a sentence that is sufficient but not greater than necessary, and to comply with the purposes set forth in paragraph two of Title 18 United States Code, Section 3553(a), the Defendant understands that the Court will first calculate the Defendant's sentencing guideline range and then consider whether the sentence imposed should be different from the advisory guidelines.

## III.  TITLE 18 UNITED STATES CODE SECTION 3553(a)

Prior to the United States Supreme Court decisions in *United States v. Booker*, 543 U.S. 220, 245-67 (2005), *Rita v. United States*, 127 S.Ct. 2456 (2007), *Kimbrough v. United States*, 128 S.Ct. 558 (2007) and *Gall v. United States*, 552 U.S. 38, 53 (2007), the Federal Sentencing Guidelines were mandatory and not advisory absent certain specific departures in rare instances. Because of the above cases, the guidelines are now equal in weight to the Title 18 United States Code 3553(a) factors.

The Title 18 United States Code Section 3553(a) factors that a district court judge must take into equal consideration to the guidelines are as follows:

   The nature and circumstances of the offense and the history and characteristics of the defendant; 18 United States Cod Section 3553(a)(1);

   and

   The need for the sentence imposed; 18 United States Code Section 3553(a)(2); and;

   to reflect the seriousness of the offense, to promote full respect for the law, and to

provide just punishment for the offense.

   to afford adequate deterrence to criminal conduct.

   to protect the public from future crimes of the defendant.

   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

 The kinds of sentences available; 18 United States Code Section 3553 (a)(3); and

 The need to avoid unwarranted disparity among defendants with similar records and similar crimes; 18 United States Code Section 3553(a)(6); and

 The need to provide restitution to any victims of the offense. 18 United States Code Section 3553(a)(7).

 There is no doubt the Defendant committed the crime as set forth in the Pre-Sentence Report. Video surveillance of the Defendant's conduct leaves no doubt as to what he actually did. As a result, the Defendant knows, and most importantly accepts, that he must be punished for his criminal activities. That being said, this Court certainly understands that sentencing is not designed to punish alone. If so, there would be no need for a Pre-Sentence Report, sentencing submissions by the parties, and the sentencing hearing itself. Instead, it would be like 2004 and before - quick, painless, and expedient - for everyone but the Defendant.

 The Defendant, like all January 6th defendants, is exactly the person for whom an individualized sentencing is designed. Many of the activities of the defendants in these cases can certainly be characterized as the same or similar in their criminal activities while many others are distinctly different in regard to their activities at the United States Capitol. Regardless, each defendant is more than just his criminal actions in the case or what the elements of the offense are. Each Defendant's history and characteristics deserve to be heard and considered. In this

instance, Defendant Miles has an extraordinary life story to tell, from being homeless and abandoned by his mother to receiving many accolades for his bravery and service to the United States of America. Based upon what is to follow in this memorandum, it is the Defendant's belief that a guideline imprisonment sentence of 24-30 months is unreasonable.

**MITIGATION ANYALYS**

**The History and Characteristics of the Defendant.  Personal and Family History**.

The Defendant was abandoned by his mother at a young age. The Defendant does not know his father's name and has no relationship with him. The Defendant's mother was a drug addict. He resided from birth to age 4 or 5 in what he described as a "trap house" in Modesto, California. At age 5 he was placed into foster care due to his mother's drug addiction. While in foster care he was raped and abused by his first foster care family.

After one year he was reunited with his mother who according to the court had been sufficiently rehabilitated. In fact, his mother was not. She offered marijuana to Steven at age 6 on the first night of reunification. His mother decided to move to Las Vegas, Nevada and took young Steven on a Greyhound bus. During this time young Steven was homeless as he and his mother slept on the streets of Las Vegas. After one (1) year his mother finally received Section 8 housing in an underprivileged and dangerous part of Las Vegas. Young Steven recalls people in the neighborhood beating him and his mother.

The Defendant recalls sleeping on the floor continuously after a drive by shooting. He was also almost shot at age 7 during another drive by shooting. He also was witness to his mother being raped where young Steven was forced to watch. They were then robbed of all their belongings. The assailants also killed his cat and wrote "die cracker" on the wall of the residence.

At the age of 12 the Defendant hitchhiked from Las Vegas back to Modesto on his own after his mother no longer wanted to take care of him. In fact, his mother even called the police to advise them that she no longer wanted to care for her child. The Defendant subsequently alternated between living with friends and going back into foster care. He was subsequently driven back from Modesto and dropped off in downtown Las Vegas alone. He later hitchhiked back to Modesto where he finally found some stability after his mother's landlord's daughter n' law agreed to care for him. They ultimately moved to Oregon where he was finally in a home which was free from drug and physical abuse. The Defendant also worked at fast-food restaurants to support himself.

**The History and Characteristics of the Defendant.  Military Record**.

The Defendant's childhood upbringing could be described at best as extremely unstable and at worst a living nightmare. Despite his exposure to drugs, illegal activity, and violence, the Defendant did not choose to lead a life of crime, violence and drug addiction like so many from similar personal histories may have done. Instead he chose to become employed at a young age, to seek educational opportunities and ultimately to serve his country with honor and distinguished leadership.

The Defendant joined the United States Army in 1999 and by the time his service ended in 2006 had achieved the rank of Sergeant. The Defendant was deployed to Iraq in 2003 and was part of the original invasion force in the "War Against Terrorism". He had a three (3) month extension due to being deployed to the First Battle of Fallujah. He was then sent for duty in the Sunni Triangle. He returned to Germany and ultimately Fort Irwin, California thereafter but soon returned for a second stint in Iraq in 2005. The Defendant was shot in the leg near Abu Ghraib, Iraq that same year.

During his time serving the United States Army the Defendant received the following decorations, medals, awards and badges:

**Army Achievement Medals**

**Top Tank**.  The Defendant's tank while stationed in Germany had the highest score in the entire brigade out of 124 tank crews.

**A second Army Achievement Medal**.  The Defendant received this award for his first six (6) months of service in Iraq during the invasion and establishment of bases there.  This medal was for exemplary service in combat in 2003.

**A third Army Achievement Medal**.  Again, the Defendant received this award for exemplary service in combat in 2003-2004.

**Army Accommodation Medals**.

**First Army Accommodation Medal**.  The Defendant served during the extension of the conflict that kept his unit in Iraq for an additional four (4) months past the one (1) year original deployment.  This included the major battles of Fallujah Ramadi Karbala and in the center of the Sunni Triangle.

**Second Army Accommodation Medal**.  The Defendant was awarded this medal for his service in leadership during his second deployment as a Non Commissioned Officer.  The second deployment included the Major battles of Sahdr City and the Abu Ghraib area of operations where he was shot and wounded.  The Defendant's entire Unit was awarded the **Presidential Unit Citation** for their efforts during their deployment.  This is a rare award which requirements read as follows:

> It is conferred on units of the armed forces of the United States and of cobelligerent nations, for extraordinary heroism in action against an armed enemy on or after December 7, 1941.

> The unit must display such gallantry, determination, and esprit de corps in accomplishing its mission as to set it apart from and above other units participating in the same campaign. The degree of heroism required is the same that which would warrant award of the Distinguished Service Cross to an individual.

**Purple Heart**.

The Defendant was awarded the purple heart after he was shot in the leg by a sniper. The Defendant's unit was in the Abu Ghraib west area of operations. One of the other Non-Commissioned Officers was home on leave and the Defendant assumed his active role. The Defendant was assisting one of his soldiers after dismounting his humvee. The Defendant was then struck in his leg by the sniper. He attempted to plant his leg to jump back into his vehicle but fell to the ground in pain. His platoon laid down covering fire while other soldiers rendered aid to him. The Defendant's platoon retreated to medivac him for medical attention. The Defendant began to lose consciousness due to loss of blood even with bandages having been applied so the Defendant tied a makeshift turnicate to his femoral artery to stop the bleeding. The Defendant was in the hospital for over two (2) months and took approximately nine(9) months to be able to walk again without assistance.

**Other Medals and Awards**.

The Defendant has also received the Global War on Terrorism Expeditionary Medal, The Global War on Terrorism Service Medal, the Iraq Campaign Medal and the National Defense Sevice Medal.

**The History and Characteristics of the Defendant. Mental Health**.

The undersigned counsel is providing as Exhibits for this memorandum a recent psychological evaluation by Dr. Valerie McCalain, Phd. of Tampa, Florida, and pertinent VA records documenting the Defendant's post-traumatic stress disorder syndrome diagnosis.


The Defendant began experiencing symptoms of PTSD soon after being shot in Iraq but it took many years for it to be formally diagnosed.  The Defendant began self-medicating with alcohol prior to the formal diagnosis.  He was suicidal on and off for several years.  The Defendant received treatment for traumatic brain injuries and PTSD due to his combat from 2008-2010.  The Defendant began asking for help when he began having "waking nightmares" about pulling a pistol on someone.  He had been having similar nightmares since after he was shot in Iraq.

Due to prior concussions from combat the Defendant has experienced loss of a sense of smell, severe migraines, memory loss, confusion, disorientation and the inability to focus.  Dr. McClain opined that his mental health issues and brain related injuries significantly impacted his capacity to conform to the requirements of the law on January 6, 2021.  The Defendant has nontheless accepted responsibility for his conduct and poor decision and is amenable to further treatment including participating in mental health counseling and medication management.  The Defendant ceased consumption of alcohol long ago when it caused him legal problems resulting in Driving Under the Influence charges and now is on a medication regimen which allows him to live a somewhat stable life despite his disabilities.

**IV.  SENTENCING POSITION**

Once this court calculates the Defendant's final offense level under the advisory guidelines and considers the factors set forth in 18 United States Code Section 3553(a), the Defendant respectfully submits that a prison sentence within the guideline range is greater than necessary.  A sentence of probation to include a period of home detention which would allow him to work would be sufficient but not greater than necessary to comply with the purposes of sentencing set forth in Title 18 United States Code Section 3553(a).

The Defendant is fully aware that he must be punished for his actions as others similarly situated already have been for their activities at the United States Capitol on January 6, 2021. The Defendant knows and accepts that this type of conduct is not political protest as envisioned by the Founding Fathers. Destruction of property and threatening behavior towards others is never acceptable anywhere.

The Defendant is aware that certain defendants in these cases may have committed the same or similar crime the Defendant pled guilty to. The Defendant is aware that his relevant conduct activity which he did not plead guilty to may be the same or similar to that of other defendants in these cases as well. The Defendant is not aware if there are any similar defendant's who have a life story as unique as his and who have the compelling mitigating factors he has, although there may certainly be defendants like him.

The Defendant humbly just asks this court to look at what he actually did at the United States Capitol on January 6, 2021 (on video) and also the factual stipulation between the parties that the Defendant "spent a total of 3 minutes" inside the building after entering. The Defendant became scared and left after entering. The Pre-Sentence Report describes the Defendant as an "average" January 6 Defendant.

The Defendant also humbly just asks this court to look at his January 6 activities in conjunction with his history and personal characteristics. After an extremely troubled childhood, the Defendant did not go down the wrong path in life. He served the United States with distinction and honor which was recognized on numerous occasions. The Defendant needs continued treatment and help to deter the demons from combat and his childhood.

Taking all of these things into consideration, an advisory guideline sentence in this instance is not appropriate.

V.  **SENTENCING EXHIBITS**

The Defense anticipates offering sentencing exhibits for the court's consideration in support of the Defendant's psychological and physical disabilities.  The defense will file those exhibits separately with a request to seal due to their sensitive nature.

## CONCLUSION

WHEREFORE the Defendant, STEVEN MILES, by and through his undersigned counsel respectfully requests that this Court grant the requested relief and/or any other relief deemed necessary.

Respectfully submitted,

*s / Ray C. Lopez*
RAY C. LOPEZ, ESQUIRE
RAY C. LOPEZ, P.A.
115 South Albany Avenue
Tampa, Florida 33602
(813) 221-4455
Florida Bar No.  870330
E-mail address:
RCLopezlaw@verizon.net
Attorney for the Defendant,
Steven Miles

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 23, 2024 I electronically filed the foregoing with the Clerk of the Court by using CM/ECF system which will send a notice of electronic filing to the Office of the United States Attorney.

*s / Ray C. Lopez*
RAY C. LOPEZ, ESQUIRE